IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **COMMONWEALTH PRESERVATION ALLIANCE, INC.**, | : : : | CIVIL ACTION |
| Petitioner, | : : | |
| v. | : : | No. 25-2475 |
| **DELGADO**, *et al.*, | : : | |
| Respondents, | : | |

**Perez, J.**                                                                                                               **December 16, 2025**

## **MEMORANDUM**

This case involves competing federal and state laws, both of which are intended to support homeowners and local communities. The federal law—the Home Equity Conversion Mortgage ("HECM") Program[1]—allows senior homeowners to withdraw the equity in their houses through a federally-backed reverse mortgage so they may age in place in their homes. The HECM Program allows for assignment of the mortgage to the U.S. Department of Housing and Urban Development ("HUD"), which is then entitled to recover the balance of the loan when it becomes due. The state law—Pennsylvania's Abandoned and Blighted Property Conservatorship Act ("Act 135")[2]—allows organizations to petition the court to appoint a conservator over certain abandoned or dangerous properties so the conservator can remediate blight. As part of the conservatorship, the appointed conservator is given a priority lien to, in part, compensate it for the cost of repairing the property.

---

[1] 12 U.S.C. § 1715z-20.

[2] 68 P.S. § 1101.

Petitioner Commonwealth Preservation Alliance ("CPA" or "Petitioner") seeks to be named conservator of a Philadelphia property that has been abandoned for over four years. But HUD has a senior lien on the property. Therefore, HUD removed the petition to this Court and then moved for dismissal for lack of subject matter jurisdiction, failure to state a claim, and ineffective service. CPA has failed to establish a waiver of sovereign immunity for actions to appoint a conservator over properties under Act 135. The Court must therefore dismiss CPA's petition for lack of subject matter jurisdiction.

## I.     The HECM Program

Congress created the HECM Program to help elderly citizens remain in their homes at a time when they must live at a reduced income. 12 U.S.C. § 1715z-20(a). It allows eligible homeowners to take out equity on their homes through a reverse mortgage that is insured by the federal government. *Id.* § 1715z-20(c). Only "first mortgage[s] or first lien[s] on real estate, in fee simple," are eligible for the HECM Program. *Id.* § 1715z-20(b)(4)–(5). Mortgagors may assign the HECM mortgage to HUD, and HUD may use funds from the Mutual Mortgage Insurance Fund to pay disbursements. *Id.* § 1715z-20(i).

A senior homeowner who obtains a loan through the HECM Program is protected from displacement because HECM defers the obligation to satisfy the loan until (1) the homeowner dies, (2) the property is sold, (3) the borrower ceases using the property as their primary residence, or (4) the borrower breaches the mortgage agreement. *Id.* § 1715z-20(j); 24 C.F.R. § 206.27(c); *see also Phila. Cmty. Dev. Coal. v. Wells*, 790 F. Supp. 3d 423, 425 (E.D. Pa. 2025). When one of those conditions occurs, the loan balance becomes due and payable, and HUD may recoup its HECM funds only through a foreclosure sale of the property. *See* 12 U.S.C. § 1715z-20(d). HUD must conduct the foreclosure sale "in a manner that . . . ensures a maximum return to the mortgage insurance fund," *Sec'y of HUD v. Sky Meadow Assoc.*, 117 F. Supp. 2d 970, 974 (C.D. Cal. 2000),

which the HUD Secretary has determined must be conducted through an "as is" sale, 24 C.F.R. § 291.210. *See also Phila. Cmty. Dev. Coal.*, 790 F. Supp. 3d at 426 n.7 ("Prior to the mid-1970s, HUD's standard practice was to repair houses before marketing them. But it found that doing so resulted in frequent vandalism, contractor fraud, and dissatisfied buyers who would rather have done renovations themselves. HUD determined such that fraud and waste frustrated the purpose of the National Housing Act, and shifted their policy to allow for sale of properties 'as-is.'").

## II.     Act 135

The Pennsylvania General Assembly enacted Act 135 to support older communities in the Commonwealth, which often suffer from numerous abandoned and blighted properties. 68 Pa. C.S.A. § 1102. Such properties diminish neighboring property values and create a threat to public safety. *Id.* Act 135, therefore, creates a mechanism for non-profit organizations or other interested parties to rehabilitate these properties and improve the quality of life in those neighborhoods. *Id.* To encourage such remediation, Act 135 allows, for example, a non-profit community organization to petition the court to be appointed conservator of a qualifying property. *Id.* § 1105. The entity that is appointed conservator then receives an interest in the property to, in part, allow it to recoup the expense of the repairs. *See id.* § 1103. After the property is rehabilitated, "[t]he conservator may file a lien against the property in an amount based on the costs incurred during the conservatorship . . . ." *Id.* § 1105(g). The conservator's lien takes priority over existing liens on the property, excluding those held by the Commonwealth. *Id.* § 1109(d). After the property is rehabilitated, "[t]he court may authorize the conservator to sell the building free and clear of all liens," so long as it distributes excess funds to any inferior liens in order of the specified lien priority. *Id.* § 1109(c)–(d).

3

### III.        Factual Background

CPA is a non-profit organization formed to remediate abandoned and blighted properties in Philadelphia neighborhoods. On April 21, 2025, it filed an Act 135 petition in the Philadelphia Court of Common Pleas seeking to be appointed conservator of a property located at 10807 Modena Drive, Philadelphia, PA 19154 (the "Property"). Not. Removal ¶ 3, ECF No. 1; Pet. ¶ 1, ECF No. 1-3 at 11. The last owner of record, Dorothy Delgado, took out a reverse mortgage through MERS, which was assigned to HUD through the HECM Program on November 8, 2018. *See* ECF No. 1-3 at 18 ¶ 44. To secure the reverse mortgage, HUD paid the balance with federal funds, and its lien was recorded in the amount of $243,000.00. *See* ECF No. 1-3 at 33.

Ms. Delgado died in 2019, and the Property has been abandoned for over four years. ECF No.1-3 at 12 ¶¶ 12–13, 14 ¶ 24. Real estate taxes have not been paid on the Property since 2018, and it is delinquent to the City of Philadelphia in the amount of $85,011.22.[3] *Id.* at 13 ¶¶ 21–22. The Property has also been in violation of the City Code and has been subject to trespass and illegal entries on multiple occasions, requiring neighbors to call the police to remove squatters. *Id.* at 14 ¶¶ 25–27. The Property has been in a dangerous condition "for an extended period of time, and no party has taken action to remove the blighting conditions or the health and safety hazards."[4] *Id.* at 24 ¶ 73.

---

[3] HUD asserts it has paid over $19,000 in taxes on the Property between January 2021 and April 2025, and that the City of Philadelphia's tax services website shows there are no outstanding real estate taxes for the Property as of June 25, 2025. ECF No. 8-1 ¶¶ 14–15.

[4] HUD contends it "conducted regular inspections of the Property" after Ms. Delgado's death and that it placed the Property into "custodial care" on February 17, 2024, and assigned a Field Service Manager, who is "a HUD contractor that provides property preservation and protection services consisting of, but not limited to, inspecting the property, securing the property, and providing on-going maintenance to address health and safety issues." ECF No. 8-1 ¶¶ 9–10. HUD further contends its contractor is working to address some of the safety hazards on the Property and "HUD is prepared to promptly begin a nonjudicial sale of the Property pursuant to 12 U.S.C. § 3751." *Id.* ¶¶ 11–12. Petitioner argues, however, that HUD has "took no action to secure the Subject Property between the death of Dorothy Delgado on October 28, 2019 and the filing of the underlying Act 135 action." Resp. Opp. Mot. Dismiss, ECF No. 11 at 7.

HUD is owed $258,324.38 on the loan. Fiegel Decl. ¶ 13, ECF No. 8-1 at 3. Now, the only avenue for HUD to acquire the federal funds it paid for the reverse mortgage is through proceeds from the sale of the Property. Mot. Dismiss, ECF No. 8 at 8. HUD asserts it "is prepared to promptly begin a nonjudicial sale of the Property." ECF No. 8-1 at 3 ¶ 12. If CPA is granted a conservatorship over the property, however, it will also gain priority liens superior to HUD's mortgage interest. CPA estimates the property will sell for $280,000. ECF No. 1-3 at 20 ¶ 59. If sold for that amount, CPA estimates it will receive $143,339, which includes the cost of remediation and the cost of the conservatorship, leaving $136,661 to the remaining lienholders. *Id.*

## IV.     Subject Matter Jurisdiction

### A.     Standard of Review

The court must dismiss a case for which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3). A party may move to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) with either a facial or factual challenge. *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). In a facial challenge like this one, the court is limited to the allegations of the petition and documents referenced in or attached to the petition. *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). The Court must accept all factual allegations as true and consider them in the light most favorable to the petitioner. *Id.*

This Court lacks subject matter jurisdiction over claims against federal agencies absent an express, unambiguous waiver of sovereign immunity. *Treasurer of N.J. v. U.S. Dep't of Treasury*, 684 F.3d 382, 395–96 (3d Cir. 2012). Exceptions to sovereign immunity must be narrowly construed. *Lehman v. Nakshian*, 453 U.S. 156, 161 (1981) ("[T]his Court has long decided that limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." (citation omitted)). It is the petitioner's

burden to establish "a clear waiver of sovereign immunity." *Phila. Cmty. Dev. Coal. v. Wells*, 790 F. Supp. 3d 423, 429 (E.D. Pa. 2025).

### B.     Discussion

CPA contends that this action "does not challenge HUD's entitlement to payment under the reverse mortgage or the validity of its lien as a matter of federal law. Rather, it seeks to invoke the Pennsylvania statutory process to determine whether the Property is 'abandoned' and 'blighted' and, if so, how lien priorities will be applied pursuant to Act 135." ECF No. 11 at 10. CPA further argues that its Act 135 action, which is merely a procedural contest as to lien priority, falls within the United States's express waiver of sovereign immunity under 28 U.S.C. § 2410(a) because it is an action to quiet title. *Id.*

A court in this district recently addressed the same arguments CPA raises here in nearly identical circumstances. *See Phila. Cmty. Dev. Coal.*, 790 F. Supp. 3d 423. In a thorough and well-reasoned opinion, Judge McHugh found that "virtually any outcome of the [Act 135] Petition poses some material threat to HUD's federally mandated objectives to protect against both discharge and diminution of its HECM lien's value. . . . Because this lawsuit meaningfully implicates the federal government's interests; it may not proceed absent a waiver of sovereign immunity." *Id.* at 429. The court further found that the Act 135 petition did not fit within 28 U.S.C. § 2410(a)'s waiver because it is not an action to quiet title or foreclose, nor is it an interpleader action. *Id.* at 430. This Court agrees.

While it may be true formalistically that CPA is not challenging the validity of HUD's lien, its Act 135 Petition necessarily threatens the lien's value. It is undisputed that HUD has a first priority lien on the Property. *See* ECF No. 1-3 at 33. And indeed, the HECM Program applies only to first priority mortgages. 12 U.S.C. § 1715z-20(b)(4). The loan became due and payable upon Ms. Delgado's death. *See* 12 U.S.C. § 1715Z-20(j). Now, HUD's only recourse to recoup its HECM

6

funds is through a foreclosure sale of the property. *See* 12 U.S.C. § 1715z-20(d)(7). HUD must conduct the foreclosure sale of the property in "as is" condition, 24 C.F.R. § 291.210, in order to maximize the "return to the mortgage insurance fund," *Sky Meadow Assoc.*, 117 F. Supp. 2d at 974.

An Act 135 conservatorship does not allow for HUD to follow these processes, regardless of who is appointed conservator. For example, if CPA is appointed conservator, the court will establish a new interest in the Property in favor of CPA, and CPA's lien will take priority over HUD's. HUD will not then be able to recover the full loan amount it is owed. If, on the other hand, HUD is appointed conservator of the Property, it will have to incur costs to rehabilitate the property, which will diminish its recovery from the ultimate sale. Therefore, "this lawsuit meaningfully implicates the federal government's interests, [and] it may not proceed absent a waiver of sovereign immunity." *Phila. Cmty. Dev. Coal.*, 790 F. Supp. 3d at 429. No such waiver applies.

CPA argues the Court can properly exercise subject matter jurisdiction under 28 U.S.C. § 2410(a). The United States has waived sovereign immunity for suits:

(1) to quiet title to,

(2) to foreclose a mortgage or other lien upon,

(3) to partition,

(4) to condemn, or

(5) of interpleader or in the nature of interpleader with respect to,

real or personal property on which the United States has or claims a mortgage or other lien.

28 U.S.C. § 2410(a). Petitioner contends this action is one to quiet title to the Property. ECF No. 11 at 10. The court must, therefore, determine whether this Act 135 Petition is within the meaning of an action to quiet title under § 2410(a)(1).

An action to quiet title is one intended to resolve disputes over interests in property. In examining the meaning of "quiet title" under § 2410(a), courts have applied different approaches. *Hunter v. United States*, 769 F. App'x 329, 331 (6th Cir. 2019) (collecting cases). Some have found a waiver of sovereign immunity "only over disputes about *title* to property and not other, analogous disputes about *interests* in property." *Id.*; *see also, e.g.*, *Raulerson v. United States*, 786 F.2d 1090, 1091–92 (11th Cir. 1986) (finding quiet title actions are only those involving controversy as to who has title to a property and "section 2410 waives sovereign immunity only in *actual* quiet title actions, not suits analogous to quiet title actions"). Others follow a broader approach and have found Congress waived sovereign immunity in actions that "seek to remove a *cloud* over already established title." *Hunter*, 769 F. App'x at 331; *see also, e.g.*, *United States v. Coson*, 286 F.2d 453, 457–58 (9th Cir. 1961) (finding § 2410 waives sovereign immunity over actions seeking to "remove a cloud on title" like determining the validity of a lien).[5] The Third Circuit follows the broader approach. *See Aqua Bar & Lounge, Inc. v. U.S. Dep't of Treasury*, 539 F.2d 935, 937–38 (3d Cir. 1976) ("An action to quiet title is the proper method of removing . . . clouds on title," including a "tax lien asserted by the government and the sale of the [property].").

The Act 135 Petition, however, does not fall under either definition. This is not a dispute over who has an existing title or an existing interest in the Property or which existing interest should have priority over the other. Rather, it is an action seeking to establish a new interest in the

---

[5] *See also Progressive Consumers Fed. Credit Union v. United States*, 79 F.3d 1228, 1231 (1st Cir. 1996) (holding "section 2410(a)(1) controversies encompass disputes concerning both the 'validity and priority of liens'").

Property that would then supersede HUD's existing interest. Because waivers of sovereign immunity must be construed narrowly, it is not enough that the Act 135 Petition is "like" or "akin" to an action to quiet title. It must be a "direct match." *Phila. Cmty. Dev. Coal.*, 790 F. Supp. 3d at 430.

Petitioner's reliance on *Aqua Bar & Lounge, Inc. v. United States Department of Treasury*, 539 F.2d 935 (3d Cir. 1979), is inapposite. There, the Internal Revenue Service (IRS) seized and sold plaintiff's property—its liquor license—for non-payment of taxes. *Id.* at 936. The plaintiff moved for a declaration that the sale was null and void because the IRS failed to comply with the requisite procedures for sale. *Id.* The court found the action was properly brought as one to quiet title under § 2410(a) because "both the tax lien asserted by the government and the sale of the license . . . would cast clouds on the title to the license," and the proper way to remove such clouds is through a quiet title action. *Id.* at 937–38. This is distinguishable from Petitioner's Act 135 Petition, which is not intended to remove clouds on the Property's title; it seeks to add a new cloud. Additionally, *Aqua Bar* was brought by a plaintiff who already held title to the property. *Id.* at 937. Petitioner here has no such claim to the Property; rather, the Act 135 Petition seeks to create an interest in the Property that does not yet exist.[6] *See Phila. Cmty. Dev. Coal.*, 790 F. Supp. 3d at 430 ("[A]n Act 135 petition seeks to establish a *new* interest and lien for a potential conservator, rather than litigating the rights of multiple parties with *pre-existing* interests."). Therefore, the Act 135 Petition does not fall within § 2410(a)'s waiver of sovereign immunity for actions to quiet title.

---

[6] Nor does *United States v. Kimbell Foods, Inc.*, 440 U.S. 715 (1979) help Petitioner. *Kimbell Foods* involved existing security interests in personal property, one of which was a federally guaranteed loan. *Id.* at 718. It did not seek to establish a new interest in property; rather, the Court held that "absent a congressional directive, the relative priority of [already existing] private liens and consensual liens arising from . . . Government lending programs is to be determined under nondiscriminatory state laws." *Id.* at 740. As discussed above, Act 135 does not merely establish priority over existing liens. It grants a new priority interest in qualifying properties, thereby diminishing the returns for existing lienholders.

Further support for this outcome can be found in case law establishing that a claimant can only bring suit under § 2410(a) if he has an existing "legal interest in the subject property." *Hunter v. United States*, No. 17-13494, 2018 WL 2009559, at *2 (E.D. Mich. Apr. 30, 2018), *aff'd*, 769 F. App'x 329 (6th Cir. 2019) ("Because Plaintiff has no present legal interest in the Lakeside Property, he lacks standing to bring this action under §2410(a)(1), and fails to establish a waiver of the Government's sovereign immunity."); *E.J. Friedman Co., Inc. v. United States*, 6 F.3d 1355, 1357–58 (9th Cir. 1993) (finding §2410 does not permit actions to quiet title by a claimant with no interest in the property). Without an existing interest in the Property, Petitioner cannot rely on § 2410(a) to establish a waiver of sovereign immunity. *Hunter*, 2018 WL 2009559, at *3. Therefore, the Court must grant HUD's motion to dismiss.

V.   **Conclusion**

This Court recognizes the importance of Act 135 petitions and their facilitation of improvements to the safety and well-being of communities in Pennsylvania. But the Court is constrained by the requirement that it read waivers of sovereign immunity narrowly. The Court notes that HUD contends it has taken steps to secure the Property and rectify the unsafe conditions, but the Act 135 Petition raises concerns as to the effectiveness of these steps. Whether HUD began taking those steps before CPA filed its Act 135 Petition or was spurred to action by the Petition, the Court trusts that HUD will exercise diligence in conducting a foreclosure sale of the Property or otherwise ensuring the safety and well-being of the Property and the surrounding neighborhood.

An appropriate Order follows.